IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

# STATE OF TENNESSEE v. FRANKLIN ROBERT BIGSBY

**Direct Appeal from the Criminal Court for Rutherford County**
**No. F-43221      James K. Clayton, Judge**

---

**No. M1999-01887-CCA-R3-CD - Decided June 16, 2000**

---

Defendant appeals his jury conviction for possession of crack cocaine over 26 grams with intent to deliver, a Class B felony. The sole issue in this appeal as of right is the sufficiency of the convicting evidence. Upon careful consideration of the record, we hold the evidence was sufficient to sustain the defendant's conviction. Thus, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

RILEY, J. delivered the opinion of the court, in which WADE, P.J. and OGLE, J. joined.

Larry D. Brandon, Murfreesboro, Tennessee, for the appellant, Franklin Robert Bigsby.

Paul G. Summers, Attorney General and Reporter; Todd R. Kelley, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and John W. Price, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The defendant and co-defendant Willie Martin were first cousins. The defendant and his three co-defendants went to a house owned by Martin's brother, who was also the defendant's first cousin. Following a tip from a confidential informant concerning drug activity, patrol officer John Jones proceeded to the location at approximately 11:00 p.m. and witnessed a large number of persons entering and exiting the house over a period of fifteen minutes. Due to their prior arrests, he knew some of these individuals were drug users. Jones stopped one of the individuals and noticed he had a small rock of crack cocaine in his hand. Thereafter, he called for police assistance and knocked on the door.

When Martin answered the door, Jones informed him of his suspicions and asked if there was anyone else in the residence other than the people he could observe in the living room. Martin stated there was no one else in the house and invited the officer to search the other rooms. Jones

searched the house for additional suspects. Upon his return to the living room, he noticed there was a small rock of crack cocaine on the table in front of where the defendant and two others were seated and a slightly larger rock on top of the television. When Jones began to question the suspects about the drugs, Martin revoked his consent to search the premises.

Thereafter, a search warrant was obtained. In addition to the .3 grams Jones observed in the living room, officers discovered 55.5 grams of cocaine under the bed in the purse of April Blivens, defendant's live-in girlfriend, and 3.9 grams of cocaine in Blivens' undergarments. However, a search of the defendant revealed no drugs, money or anything of value. The police also recovered from under the couch cushion in the living room some Tanitz scales, commonly used in the drug trade, and $1,914.00 in cash in a bedroom. The defendant and the three co-defendants were arrested.

At trial Martin testified that he had been living in Nashville for several months with the defendant and Blivens. He stated that they all came to Murfreesboro for the purpose of using his brother's home to sell drugs. When Martin was asked if he made the arrangements to secure his brother's home, he replied that the defendant, his brother's first cousin, did so.[1] He subsequently reiterated that he (Martin) was not the one who asked his brother for the use of the house.

Martin further testified that the defendant and Blivens made their living selling drugs, although the defendant also received disability payments. He stated further that Blivens was the one actually selling the drugs on the date in question. Martin testified he did not see the defendant selling any drugs or receive any money from Blivens. According to Martin, the defendant was "just there."

The defendant was convicted of possession of 26 grams or more of cocaine with the intent to deliver. The defendant appeals, asserting the evidence was insufficient to support his conviction.

## STANDARD OF REVIEW

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. Id. This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a

---

[1]When first questioned about the house, Martin was asked "but you got it so ya'll could deal; is that the deal?" Martin replied, "yes, sir." It is unclear whether Martin meant he personally made the arrangements. However, his subsequent testimony indicated Martin did not make the arrangements.

reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

Although the evidence of the defendant's guilt is circumstantial in nature, circumstantial evidence alone may be sufficient to support a conviction. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn. 1987); State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). However, in order for this to occur, the circumstantial evidence must be not only consistent with the guilt of the accused but it must also be inconsistent with innocence and must exclude every other reasonable theory or hypothesis except that of guilt. Tharpe, 726 S.W.2d at 900. In addition, "it must establish such a certainty of guilt of the accused as to convince the mind beyond a reasonable doubt that [the defendant] is the one who committed the crime." *Id.* (quoting Pruitt v. State, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970)).


## LAW RELATING TO POSSESSION


The defendant argues that the State failed to prove either actual or constructive possession. He contends that the residence in which the drugs were found did not belong to him or his co-defendants. Thus, he asserts his mere presence at the scene and association with those in possession of the cocaine is not sufficient for his conviction.

In order to convict the defendant, the state was required to prove beyond a reasonable doubt that the defendant (a) knowingly possessed crack cocaine, (b) with the intent to deliver, and (c) the amount of cocaine possessed was 26 grams or more. Tenn. Code Ann. §§ 39-17-417(a)(4) and (i)(5). The state unquestionably proved beyond a reasonable doubt that the substance found in the residence was crack cocaine; the weight of the cocaine exceeded 26 grams; and it was possessed by one or more persons for the purpose of being sold or delivered. Thus, the only remaining question is whether the defendant is criminally responsible.

A conviction for possession of cocaine may be based upon either actual or constructive possession. State v. Brown, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). Before a person can be found to constructively possess a drug, it must appear that the person has the power and intention at any given time to exercise dominion and control over the drugs either directly or through others. State v. Willaims, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. Cooper, 736 S.W.2d at 129. Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs. State v. Transou, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996).

We also note the state's reliance upon the defendant being criminally responsible for the conduct of Blivens. Tenn. Code Ann. § 39-11-402(2) provides that a person is criminally responsible for an offense committed by another if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or the results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." The jury was instructed as to this statute.

## ANALYSIS

Clearly, the most damaging testimony against the defendant came from co-defendant Martin. The defendant insists parts of the testimony of Martin are subject to different interpretations, some of which do not incriminate the defendant. However, we are required to view the evidence in the light most favorable to the state. State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). Furthermore, this court is not at liberty to judge the weight and credibility of Martin's testimony as these matters are entrusted exclusively to the jury. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). With these principles in mind, we examine the issue of sufficiency of the evidence.

According to Martin's testimony, and in a light most favorable to the state, the defendant and Blivens lived together and made their living selling drugs. Their purpose in coming to the residence in Murfreesboro was to sell drugs, and the defendant made the arrangements with Martin's brother, who was the defendant's first cousin, to use his residence for this purpose.

Immediately prior to the officer's entry into the residence, the officer observed numerous drug users entering and exiting the residence where the defendant was present and further verified that one of these persons possessed crack cocaine. Although most of the cocaine was tied directly to Blivens, a small amount of cocaine was on the table in front of the defendant and on the television in the living room occupied by the defendant. Scales were also found under the couch cushion in the living room. From this testimony a jury could rationally conclude that not only was the cocaine being sold in the defendant's presence at the residence, but also the defendant came there for that specific purpose. A jury could further rationally conclude that the defendant, by making arrangements with his first cousin to secure the residence for the purpose of selling drugs, acted with the intent to and in fact did aid Blivens in the sale of drugs. The jury could further rationally conclude, based upon Martin's testimony, that the defendant intended to benefit in the drug proceeds along with Blivens since they lived together and that is how they "made their living." Accordingly, the evidence was sufficient to support the defendant's conviction.

The defendant relies upon State v. Transou, 928 S.W.2d 949 (Tenn. Crim. App. 1996), and State v. Cooper, 736 S.W.2d 125 (Tenn. Crim. App. 1987). The essence of the holdings in these cases is that mere presence at a location where drugs are sold or mere association with those selling drugs is not sufficient to establish criminal liability. However, each case is fact specific. The facts in the case at bar show more than mere presence and more than mere association with those selling drugs. Accordingly, these cases are distinguishable.

-4-

## CONCLUSION

Based upon our review of the record, we conclude a rational trier of fact could find the defendant guilty of the unlawful possession of cocaine over 26 grams with the intent to deliver. The judgment of the trial court is affirmed.