# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 7, 2003

## STATE OF TENNESSEE v. DWAYNE A. WILLIAMS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-09567    Bernie Weinman, Judge**

---

**No. W2002-00829-CCA-R3-CD - Filed April 29, 2003**

---

The defendant was convicted by a jury of possession of more than 300 grams of cocaine with the intent to deliver. The trial court sentenced the defendant as a Range I standard offender to twenty years incarceration. The defendant contends the evidence is insufficient to sustain his conviction. We conclude the evidence is sufficient to sustain the defendant's conviction and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Robert Wilson Jones, District Public Defender; Karen Massey and Garland Ergüden, Assistant Public Defenders, for the appellant, Dwayne A. Williams.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; William L. Gibbons, District Attorney General; and Scot A. Bearup, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Dwayne A. Williams, appeals his conviction of possessing more than 300 grams of cocaine with the intent to deliver. On May 16, 2001, the defendant was arrested at a Greyhound Bus Terminal in Memphis after a police officer discovered the defendant in possession of a bag which contained two packages of cocaine. The defendant was found guilty by a jury and was sentenced by the trial court on April 4, 2002, as a Range I standard offender to twenty years incarceration. The defendant contends the evidence is insufficient to sustain his conviction.

**Facts**

Keith Watson, a City of Memphis police detective, testified that he was working at the Greyhound Bus Terminal at noon on May 16, 2001. He said that he and Officer Mary Sampietro were assigned the duty of halting the flow of illegal narcotics into Memphis via the bus terminal. He said he has been assigned to the Greyhound Bus Station since 1998. He said he recalled a bus arriving at the bus station inbound from Chicago, via Effingham to Memphis to Louisiana. He said he stood by the pay phone area inside of the terminal and Officer Sampietro was stationed beside him. He said that from his vantage point, he was able to observe no more than forty-five and no less than twenty passengers getting off of the inbound Chicago bus. He said that, usually, people exiting the bus either come into the terminal or remain on the loading docks before going to the baggage claim to get their bags. He said the bus station faces north at Redbird Stadium. He said that when buses pull into the lot, they are either coming east or west on Union. He said the Chicago bus stopped on the east side. He said a passenger on the Chicago bus would walk directly west and go either into the covered top area or south to the baggage claim area.

Detective Watson said that on May 16, 2001, he noticed an individual get off the bus and walk around to the north, back through the entryway of the buses, which is a dangerous area. He said the individual then made a left turn, "which was west and headed toward the front of the station, which is a longer route to take than if you were to walk into the terminal and out of the front door through the electric door." He said several people then got off of the bus, and he saw the defendant get off of the bus and walk through the driveway. He said the defendant walked in the direction of the individual he noticed previously. He said he told his partner to go to the front door and look for the first individual. He said he followed the defendant to the corner and toward a taxicab, which had been secured by the first individual. He said the first individual placed his blue backpack into the trunk of the taxicab. He said the taxi driver closed the trunk of the car and got into the taxi, but did not leave. He said the defendant made his way to the taxicab with a black and red nylon book satchel on his shoulder. He said the defendant had carried only a black and red nylon book satchel on his shoulder when he walked off of the bus.

Detective Watson said that he then approached the defendant and identified himself as a police officer as the defendant went to the door of the taxicab. He said he was not wearing a uniform, but wore his black utility belt with his pistol, badge, radio, rubber gloves, and handcuffs. He said he asked the defendant if he had a bus ticket, and the defendant replied that the bus driver had his ticket. He said he asked the defendant if he owned the bag he carried on his shoulder, and the defendant said that the shoulder bag belonged to him. He said he asked the defendant if he could look in his bag, and the defendant then said that the bag did not belong to him and that he had stolen the bag after he saw it lying on the floor. He said he asked the defendant to hand him the bag, in order to find the identification of its owner. He said that when he opened the bag, he found assorted clothing, food wrappers, and two large packages of cocaine. He said that in the defendant's bag were two mass, hard, brick-type objects wrapped in clear plastic. He said the smaller white substance wrapped in clear plastic was placed inside a Crown Royal bag. He said the cocaine was wrapped in a brown or black trash bag, which was wrapped around the clear plastic wrap. He said he

immediately detained the defendant and asked the passenger in the rear seat if the bag in the trunk belonged to him. He said the passenger, who was identified as Mark Chandler, would not speak. He said he opened Chandler's bag located in the trunk and found over one pound of marijuana. He said that he and his partner removed both the defendant and Chandler from the front of the terminal to the rear of the terminal for further investigation and to frisk both of them.

The prosecution gave Officer Watson the State's Exhibit 2 for identification in the presence of the jury. Officer Watson opened the black bag and testified that the larger block of cocaine was wrapped in assorted pieces of clothing. He pulled out pieces of the clothing and said the bag contained Tommy Hilfiger boxers, a shirt, and a pair of sweatpants. The prosecution handed Officer Watson two other items for identification. Officer Watson testified that the items were a Greyhound-issued pamphlet with a slot for holding a purchased bus ticket and a baggage claim stub which had stars on each side and the imprinted words, "claimed stub bag or bags checked 15th day of May 2001, at 11:29 p.m. to a Williams, Ms. or Mr." He said that the baggage claim stub is the actual tag affixed to a bag and placed underneath the Greyhound Bus, and on it is the originating city as well as the destination. He said the tag was not attached to the defendant's bag, but was inside it. He said that two minutes passed between the time he witnessed the first individual get off of the bus and the time the defendant got off of the bus. He said that after he left the taxicab stand, he took the defendant and Chandler back to an office in the back of the terminal. He said the defendant and Chandler were separated and frisked. He said that after five to ten minutes, he took the defendant and Chandler to his satellite office. He said that while they were at the bus station and the following morning, no one reported missing a black backpack. He said that after the packages tested positive for marijuana and cocaine, he took them into the property room and signed them in as evidence. He said the marijuana and cocaine did not leave his possession from the time the defendant and Chandler were taken into custody until the time he checked the drugs into the evidence room. He said the individuals were taken to the county jail for booking and processing. He said he did not notice anyone else get off the bus and take the same route as the defendant and Chandler.

On cross-examination, Officer Watson testified that when the defendant exited the bus, he did not go to baggage claim. He said the ticket stubs found in the defendant's bag were not on the defendant's bag. He said that a bag in storage would have a baggage claim check. He said some passengers take their bags on the bus if they have room. He said the bus driver may tell some people who board the bus between Memphis and Little Rock to put their bag underneath. He said that some people, while purchasing tickets, may ask for a baggage claim ticket. He said he did not know for sure if the bag belonged to the defendant. He said the defendant went to the street, instead of going into the terminal, after getting off the bus. He said it is almost twenty yards from the bus to the street. He said he asked the defendant if he could look in the bag, and the defendant said that the bag was not his and that he tried to steal it.

The defense counsel asked Officer Watson to reexamine the contents of the defendant's bag. Officer Watson pulled out a red shirt and testified that the shirt was a size, "triple XL." He said the underwear he pulled out of the bag was an extra large size. He pulled out the jogging pants and said

the pants were a "triple XL" size. He pulled out a McDonald's bag and socks. He said the defendant told him that Chandler was not traveling with him.

The defendant, Dwayne Andre Williams, testified that he took a bus from Chicago to Memphis. He said he had a bag with him when he got off the bus. He said he picked up the bag from the floor of the bus, without looking in the bag. He said that he does not know Mark Chandler. He said that an officer stopped him, took possession of the bag, and opened it "right then and there." He said that the officer pulled some clothes out and then pulled the plastic bag out. He said that when the officer opened the plastic bag, it contained some cocaine. He said he was just as surprised as the officer.

On cross-examination, the defendant testified that he rides buses to steal bags, jewelry, and cameras to pawn for money. He said that this was not the first time that he had stolen a bag. He said he had nowhere to stay in Memphis. He said that he could not say that he would not have done anything with the cocaine, but he was glad that it did not get into the hands of children.

The defendant was given several items and asked to identify each of them. The defendant testified that he did not know if the bus ticket given to him by the prosecution was his own. He said that he did not remember seeing a bag ticket like the one given to him. He said that he did not think the bus ticket belonged to him, because he did not remember it. He said the bag claim ticket shows that the route was Chicago, 95th, Illinois, and Memphis. He said that after leaving Memphis, he planned to take the next bus to Chicago. He said that at the time he was arrested, he planned to go to the nearest alley to open the bag and see what was inside. He said that he has gotten on buses three or four times to steal bags. He said that at the time he was arrested, he was not attempting to get into a taxicab. He said that he walked past the taxicab. He said that the arresting officer's testimony was incorrect.

## Analysis

The defendant argues the evidence is insufficient to support his conviction, because he did not knowingly possess cocaine with the intent to deliver. The defendant argues that the conviction rests solely upon his possession of a bag containing two packages of cocaine. He argues that the jury overlooked the fact that the bag that he stole contained clothing so large that it could not have belonged to him. He also argues that he freely admitted that his method of earning a living is by riding buses and stealing property.

The proper inquiry for this Court to review the defendant's challenge to the sufficiency of the evidence to support a conviction is whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999). Questions concerning the credibility of witnesses, the weight and value to be given evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. State v. Cabbage, 571 S.W.2d 832, 835

(Tenn. 1978). A guilty verdict accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). The defendant has the burden of demonstrating that the evidence is not sufficient when there is a challenge to the sufficiency of the evidence. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The primary issue raised as to the sufficiency of the evidence is whether it was established that the defendant posessed the cocaine with the intent to deliver. The defendant contends the evidence does not support his conviction and the jury overlooked pertinent evidence. We disagree.

Possession may be "either actual or constructive." State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); see also State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). A person constructively possesses control over a substance when he has the power and intention to exercise dominion and control over the substance either directly or through others. Shaw, 37 S.W.3d at 903 (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)); Bigsby, 40 S.W.3d at 90. We note that "the mere presence of a person in an area where drugs are discovered is not, alone, sufficient." Bigsby, 40 S.W.3d at 90; see also State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).

An offense may be proven by circumstantial evidence alone. Price v. State, 589 S.W.2d 929, 931 (Tenn. Crim. App. 1979). Our scope of review is the same when the conviction is based upon either circumstantial evidence or direct evidence, or when there is a mixture of both. State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 208 Tenn. 75, 343 S.W.2d 895, 897 (1961).

In the instant case, testimony established that the defendant was seen in possession of the bag, which contained over three hundred grams of cocaine. Testimony reveals the defendant was in sole control of the contraband from the time he left the bus station until the time he was apprehended. The defendant argues that he stole the bag and that he was surprised to discover that it contained two packages of cocaine. The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). By their verdict, the jury refused to accept the testimony of the defendant as to how he came in possession of the drugs, as is their prerogative. A jury may infer possession for sale or delivery based upon the quantity of the drugs coupled with the surrounding circumstances. State v. Holt, 691 S.W.2d 520, 522 (Tenn. 1984). It is our view that from all of the evidence presented, a rational jury could have determined that the defendant was guilty of possessing the cocaine with the intent to deliver. See Tenn. Code Ann. § 39-17-417(a)(4). In the instant case, the defendant possessed two packages containing more than 300 grams of cocaine.

## Conclusion

Accordingly, we find the evidence sufficient to sustain the defendant's conviction and affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE