IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 2, 2006

## STATE OF TENNESSEE v. CEDRIC P. GOLDEN

**Direct Appeal from the Circuit Court for McNairy County**
**No. 1697     J. Weber McCraw, Judge**

_____

**No. W2005-02743-CCA-R3-CD  - Filed August 4, 2006**

_____

A McNairy County jury found the defendant, Cedric P. Golden,  guilty of possession of more than ten pounds of marijuana with intent to deliver and possession of drug paraphernalia.  The trial court sentenced the defendant to an effective sentence of five years and imposed a fine of $5,150.00.  On appeal, the defendant argues that the evidence is insufficient to sustain his convictions.  After review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J.C. McLIN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ, joined.

Shana Johnson (on appeal), Senior Assistant Public Defender, Somerville, Tennessee, and William Hatton (at trial), Bolivar, Tennessee, for the appellant, Cedric P. Golden.

Paul G. Summers, Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; Elizabeth Rice, District Attorney General; and Terry Dycus and Cameron Williams, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant's convictions originated from the seizure of contraband during the execution of a search warrant at 1226 Peach Street in Selmer, Tennessee.  At trial, Dana Rose, a forensic scientist with the Tennessee Bureau of Investigation, testified that she examined and weighed a substance sent to her by police and identified as exhibit one.  She confirmed that the substance was marijuana and collectively weighed 11,750 grams or 42.8 pounds.  She testified that the marijuana was individually wrapped in bags or blocks.  She further explained that exhibit one consisted of numerous marijuana bags weighing between .6 grams and 195.8 grams. Also included in the exhibit were three blocks of marijuana, weighing 3,214.4 grams; 1,099.9 grams; and 2,955.6 grams.

Agent Rodney Weaver of the West Tennessee Judicial Drug Task Force, testified he sought and executed the search warrant on April 4, 2003, around 5:15 p.m. According to Agent Weaver, the house located at 1226 Peach Street was owned by co-defendant, Sharry Surratt. Upon searching the house, drugs were discovered in the basement area. The drugs were hidden underneath the basement stairwell in a hollow place behind a section of sheetrock. The drugs were "vacuum sealed" in a silver wrapper. Agent Weaver explained that many times drugs are vacuum sealed to maintain freshness and deter drug-sniffing dogs from smelling them. Agent Weaver stated that the process of vacuum sealing drugs is not consistent with personal use. Agent Weaver also stated that he found a Tech-9 handgun and a separate but loaded magazine cartridge in a black Nike bag. The bag was found near the drugs. Agent Weaver also found a set of hand scales used to weigh small amounts of marijuana.

Agent Weaver testified that both men and women's clothes were found in the master bedroom. The defendant's personal effects and documents were found in various rooms including a W-2 Form found in the master bedroom. A set of digital scales were found in the closet of the master bedroom. Cash and individual bags of marijuana were found in a leather jacket. Two photographs of the defendant were found on the kitchen counter. An ashtray with marijuana residue and blunt material was found in the living room. Various vehicles were seized outside of the residence.

Agent Weaver testified that 42 pounds of marijuana was considered a high amount for one person to have. Agent Weaver explained that there are 28 grams in an ounce; 16 ounces in a pound; "and an ounce of marijuana would be equivalent to rolling approximately 10 packs of cigarettes." He testified that the street value for an ounce of marijuana would run approximately $160.00. A smaller amount called a "quarter bag" would run about $50.00 because the "more you break it down, the more your profit will be." Agent Weaver stated that because of the quantity and packaging, he believed the dope was not homegrown but manufactured elsewhere. Agent Weaver valued the amount of marijuana found to be worth approximately $42,000.00.

On cross-examination, Agent Weaver acknowledged that an individual can purchase vacuum sealers at Wal-Mart, however, Agent Weaver stated no vacuum sealer was found at the residence. On re-direct examination, Agent Weaver stated that three of the vehicles seized at the residence were owned by the defendant.

Various police officers testified concerning their participation in the execution of the search warrant. Police Officer Kim Holley testified that he participated in the search of the basement and discovered under the basement stairs a "large bag [containing] blocks of marijuana." Officer Holley recalled finding a small amount of marijuana in the master bedroom. He also recalled finding the defendant's bank statement in the master bedroom. Police Officer Guy Buck searched behind the basement stairs and found a black garbage bag full of "a large quantity of a green, leafy substance." Although he did not access it, Officer Buck saw a piece of sheetrock that had four screws in it underneath the stairs. Officer Buck also went to a bedroom located in the southwest corner of the

house where he found a little bag of marijuana.  In the same area, he also found a purse with financial documents in it.  The financial documents had Surratt's name on them.  Officer Buck stated that the bedroom appeared to be occupied by a woman.

Police Officer Jim Replogle testified that while he was outside securing the residence the defendant pulled up into the driveway and asked what was going on.  Officer Replogle told the defendant that police were securing the house for a search warrant.  The defendant said "okay," then calmly left.  Police Officer Robert Lee Heathcock, III testified that he searched the master bedroom and found a plastic bag of marijuana and two sets of digital scales in the closet. Officer Heathcock explained that the scales were used to "weigh out the precise measurements of illegal drugs."  Officer Heathcock also testified that he found a smoking pipe, small bags, and a letter addressed to Sharry Surratt in the master bedroom.

After the presentment of the state's case-in-chief, co-defendant Sharry Surratt was called to testify.  Surratt testified that she, the defendant, and her daughter resided in the house.  Surratt testified that her bedroom was the southwest bedroom Officer Buck searched.  Surratt stated that the basement was used for storage and she had not been down there for months.  She said that she and the defendant sometimes slept in the master bedroom.  She acknowledged she sometimes smoked marijuana in the house, but she denied selling marijuana.  On cross-examination, she stated that the defendant lived with her in the house but indicated that he did not live with her at times when they broke up.  She acknowledged seeing one of the scales on the dresser, but she denied knowing what the scales were used for.  She stated that she did the majority of the house cleaning, but everybody living in the house had to pick up.  According to Surratt, she and the defendant had placed the sheetrock underneath the steps for renovation purposes.  However, Surratt adamantly denied knowing that marijuana was hidden in her basement.

After hearing the evidence, the jury convicted the defendant of one count of possession of more than ten pounds of marijuana with intent to deliver and one count of possession of drug paraphernalia.  The trial court sentenced the defendant to an effective sentence of five years and imposed a fine of $5,150.00.

**ANALYSIS**

On appeal, the defendant argues that the evidence is insufficient to support his convictions. In particular, the defendant contends that no evidence, direct or circumstantial, proves he possessed marijuana and drug paraphernalia.  Upon review, we reiterate the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992).  Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003);

Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *Id*.

In order to convict the defendant of possession of ten pounds or more of marijuana with intent to deliver, the state was required to prove beyond a reasonable doubt that the defendant: (1) knowingly possessed marijuana, (2) with intent to sell or distribute, and (3) the quantity of marijuana was not less than ten pounds nor more than seventy pounds. *See* Tenn. Code Ann. § 39-17-417(a)(4), -(g)(2). The state also had to prove the defendant possessed drug paraphernalia with the intent to use it to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance[.]" *See id*. § 39-17-425.

A conviction for possession of drugs or drug paraphernalia may be based upon actual or constructive possession and may be proven by direct or circumstantial evidence. *See State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). Notably, drugs or drug paraphernalia may be possessed solely or jointly with others. *See State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). In addition, a conviction may be based solely upon circumstantial evidence; however, the circumstantial evidence must be "so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford*, 470 S.W.2d 610, 612 (Tenn. 1971); *see also State v. Jones*, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995).

Constructive possession is demonstrated by showing that a person had the power and intention at a given time to exercise dominion and control over the drugs or drug paraphernalia either directly or through others. *Shaw*, 37 S.W.3d at 903. In essence, constructive possession is the ability to reduce the contraband to actual possession. *See State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981). However, "[o]ne's mere presence in an area where drugs are discovered, or one's mere association with a person who is in possession of drugs, is not alone sufficient to support a finding of constructive possession." *Shaw*, 37 S.W.3d at 903 (citing *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997); *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)).

The intention to sell or deliver drugs may be inferred from the amount of the drug possessed by the accused along with other relevant facts surrounding the arrest. *See* Tenn. Code Ann. § 39-17-419. *See also State v. John Fitzgerald Belew*, W2004-01456- CCA-R3-CD, 2005 WL 885106, *5 (Tenn. Crim. App., at Jackson, Apr. 18, 2005) (determining that jury can infer intent to sell or deliver

when amount of controlled substance and other relevant facts surrounding arrest are considered together).

Applying the foregoing standard of review, we conclude that the evidence was sufficient to support the defendant's convictions based upon a theory of joint, constructive possession of the marijuana and drug paraphernalia. The record reflects that the defendant was the boyfriend of co-defendant Surratt, and he lived in her house. Upon execution of a search warrant, police discovered approximately 42 pounds of marijuana inside Surratt's house. A large amount of the marijuana was found in the basement, hidden behind some sheetrock. The defendant helped Surratt hang the sheetrock in the basement. Police also found certain items belonging to the defendant including a bank statement, W-2 Form, and clothing. Furthermore, the police found some marijuana, digital scales, and a smoking pipe in the master bedroom where the defendant slept. Accordingly, viewing the evidence in the light most favorable to the state, we conclude that a rational jury could have found the defendant guilty of possession of more than ten pounds of marijuana with intent to deliver and possession of drug paraphernalia.

## CONCLUSION

Based upon the foregoing reasoning and authorities, we affirm the judgments of the trial court.

_____
J.C. McLIN, JUDGE