# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 3, 2013

## STATE OF TENNESSEE v. BENJAMIN GUNN

**Appeal from the Criminal Court for Shelby County**
**No. 08-0042     W. Mark Ward, Judge**

**No. W2013-00675-CCA-R3-CD  -  Filed December 26, 2013**

Benjamin Gunn ("the Defendant") was convicted by a jury of two counts of possession of cocaine, one count of possession with intent to sell 14.175 grams or more of marijuana, one count of possession with intent to deliver 14.175 grams or more of marijuana, and one count of tampering with evidence. The trial court merged the two convictions for possession of cocaine. The trial court also merged the conviction for possession with intent to deliver 14.175 grams or more of marijuana into the conviction for possession with intent to sell 14.175 grams or more of marijuana. The trial court sentenced the Defendant to an effective sentence of eight years, eleven months, and twenty-nine days' incarceration. On appeal, the Defendant challenges the sufficiency of the evidence supporting his convictions for possession with intent to sell and deliver 14.175 grams or more of marijuana. After a thorough review of the record and the applicable law, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Claiborne H. Ferguson and Andrew R. E. Plunk, Memphis, Tennessee, for the appellant, Benjamin Gunn.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin E.D. Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Meghan Fowler and Josh Corman, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

A Shelby County Grand Jury indicted the Defendant on one count each of possession with intent to sell twenty-six grams or more of cocaine, possession with intent to deliver twenty-six grams or more of cocaine, possession with intent to sell one-half ounce (14.175 grams) or more of marijuana, possession with intent to deliver one-half ounce (14.175 grams) or more of marijuana, and tampering with evidence. The Defendant proceeded to a jury trial on November 27, 2012.

Detective Kittrel Robinson with the Memphis Police Department ("MPD") testified that he had worked with the Organized Crime Unit ("OCU"), which served to "combat street level drug sales, sometimes interdiction drug sales, all of the major crimes that happen in the City of Memphis, Shelby County." As part of his job, Detective Robinson participated in "controlled buys," in which confidential informants are used to purchase drugs. From there, Detective Robinson conducted surveillance on the suspected possessor of drugs, which sometimes resulted in executing a search warrant. In Detective Robinson's opinion, it was common to find the suspect armed or in the possession of weapons when executing the search warrant. Upon executing such a search, the "case agent" in each situation was responsible for handling all evidence found as a result of the search and transporting that evidence to the property and evidence room for the MPD.

Detective Robinson was the case agent in an investigation resulting from a tip by a confidential informant that the Defendant and Trennell Smith were selling drugs at a certain location. Detective Robinson's confidential informant then made a controlled buy of thirteen grams of marijuana at this location. Upon further investigation, Detective Robinson learned that the location from which the two men were selling drugs was the Defendant's residence. Detective Robinson conducted surveillance of the residence and observed other people he knew to be drug dealers going in and out of the home.

Based upon all of this information, Detective Robinson obtained a search warrant to search the Defendant's residence. Detective Robinson and his team of officers executed the search warrant at approximately 4:30 p.m. on August 1, 2007. When they arrived at the Defendant's residence, the Defendant was sitting on a couch with Smith. Detective Robinson stated,

> As we yelled "Police, Police search warrant," nobody would move to come
> open the door, at which time Mr. Smith, Trennell Smith kind of laid down,
> threw his hands up, so he was surrendering. [The Defendant] looked at us,

-2-

reached on the table, grabbed what's known to me to be packaged crack cocaine and he took off running.

Detective Robinson noted that all of the officers wore vests that had "police" on them. He continued,

At which time [the Defendant] runs away. In fear that he may be trying to destroy the evidence, or maybe get a gun, or whatever, we went ahead and forced entry inside the house.

. . . .

[The Defendant] then made a quick right into the bathroom and I was coming around the corner and he made a tossing motion where the crack cocaine package that he picked up from the table was thrown in the toilet and he flushed. . . .

So we move him, we do this as a common practice. We turned the water off the commode and we always bring our equipment in, because most time people try to run to the bathroom and destroy evidence. And at which time we destroyed the toilet by busting it open, turned the water off to stop it from flushing, busted it open and we can catch the drugs in time, before they go down.

Detective Robinson confirmed that they recovered a bag of crack cocaine from the neck of the toilet.

The officers then handcuffed the Defendant and placed him back in the living room with Smith. At that time, the officers initiated a full search of the residence. From this search, the officers found marijuana on a table and more crack cocaine and marijuana inside a clock in the living room. Additionally, they found bullets, two handguns, three hundred dollars, "baggies," and scales. Detective Robinson noted that "baggies" and scales were "common in drug houses" because buyers might want the drugs weighed in front of them before paying money.

Detective Robinson testified that he weighed the cocaine before sending it to the Tennessee Bureau of Investigation ("TBI") and recalled that the two bags of cocaine weighed nineteen grams and fourteen grams, respectively. In his experience, people who possessed crack cocaine for personal use might possess as much as 0.2 grams, which is worth

approximately $20. Therefore, possession of twenty grams of crack cocaine would be significantly more than one person normally would possess for personal use.

Detective Robinson also identified at trial a bag of marijuana that, at the time he weighed it, weighed approximately forty grams. He stated that usually marijuana users buy enough for a "blunt," which is a marijuana cigarette that contains approximately one-half gram of marijuana. This amount would cost approximately $5. Therefore, Detective Robinson associated possession of this great a quantity of marijuana with one having the purpose to sell it.

On cross-examination, Detective Robinson acknowledged that he only observed the Defendant actually handle one of the bags of cocaine and not the other bag of cocaine or the bag of marijuana. He agreed that the other bag of cocaine was found under the couch. Detective Robinson also acknowledged that Smith had approximately $300 in his pocket but that the Defendant did not have any money in his pockets. He agreed that Smith, and not the Defendant, was actually the target of the search warrant, even though the search warrant was for the Defendant's residence. Additionally, Detective Robinson confirmed that Smith had pictures of all the confiscated weapons on his cell phone.

Officer Laquita Gladney testified that she used to work for the OCU but worked with Internal Affairs at the time of trial. When she worked for the OCU, she was responsible for chain of custody, which included transportation of evidence from the property and evidence room at the MPD to the TBI crime laboratory. Officer Gladney identified several envelopes at trial as envelopes that she transported to the TBI.

Detective Benjamin O'Brien testified that he worked with the OCU for the MPD. On August 1, 2007, he was part of the team executing the search warrant at the Defendant's residence. He recalled the toilet flushing as he entered the residence and observed the Defendant exiting the bathroom. Detective O'Brien then "put [the Defendant] on the ground and put handcuffs on him." He then walked the Defendant into the living room and searched him for weapons. Detective O'Brien stated that, in his experience, hearing a toilet flushing during the execution of a similar search warrant indicated that someone was trying to dispose of drugs.

Detective Brett Giannini of the MPD testified that he was assigned to the OCU on August 1, 2007, and he was part of the team executing the search warrant at the Defendant's residence. As he entered the residence, he observed the Defendant exiting the bathroom. Detective Giannini stated that he retrieved the crack cocaine that had been flushed down the toilet. Upon obtaining the package of crack cocaine from the neck of the toilet, he turned over the package to Detective Robinson. Detective Ginanni confirmed that, from his

experience, it was very common for individuals to attempt to flush evidence down the toilet during the execution of search warrants.

Special Agent Shalandus Harris, a forensic scientist with the TBI, testified as an expert in drug identification. She tested three different bags of material, weighing each of these items before conducting a drug analysis.[1] Special Agent Harris first tested a bag of "plant material" that she later confirmed to be 17.13 grams of marijuana. She also tested two bags of a "rock like substance" weighing 12.54 grams and 12.58 grams, respectively, which both tested positive for cocaine.

At the conclusion of the State's proof, the defense moved for a judgment of acquittal, which the trial court denied. The Defendant chose not to testify and presented no proof. Following deliberations, the jury found the Defendant guilty of two counts of possession of cocaine, lesser-included offenses of the indicted charges. The jury also convicted the Defendant of one count of possession with intent to sell 14.175 grams or more of marijuana, one count of possession with intent to deliver 14.175 grams or more of marijuana, and one count of tampering with evidence.

Following a sentencing hearing, the trial court sentenced the Defendant to eleven months, twenty-nine days for each of the possession of cocaine convictions, two years for the possession with intent to sell 14.175 grams or more of marijuana conviction, two years for the possession with intent to deliver 14.175 grams or more of marijuana conviction, and six years for the tampering with evidence conviction. The trial court merged the convictions for possession of cocaine. The trial court also merged the conviction for possession with intent to deliver 14.175 grams or more of marijuana into the conviction for possession with intent to sell 14.175 grams or more of marijuana. The trial court ordered the Defendant's sentences to run consecutively, for an effective sentence of eight years, eleven months, and twenty-nine days' incarceration.

The Defendant filed a motion for new trial, which the trial court subsequently denied. He timely appealed, challenging the sufficiency of the evidence supporting his convictions for possession with intent to sell and deliver marijuana.

---

[1] According to her initial forensic report from 2009, the tested marijuana sample weighed 17.6 grams, and the two "rock like substance[s]" weighed 12.5 grams and 12.7 grams, respectively. Special Agent Harris testified at trial, however, using her forensic report from the analysis she conducted in 2012 of the same samples.

**Analysis**

*Sufficiency of the Evidence*

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our supreme court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Furthermore, it is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

In Tennessee, "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4) (2006). Marijuana is classified as a Schedule VI drug, see Tenn. Code Ann. § 39-17-415(1) (2006), and possession with the intent to sell or deliver 14.175 grams or more but less than ten pounds (4,535 grams) of marijuana is a Class E felony. See Tenn. Code Ann. § 39-17-417(g)(1).

-6-

The Defendant first asserts that the State failed to provide sufficient evidence to establish possession. Possession in Tennessee may be actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). Additionally, one may be in possession (of an item) alone or jointly with others. State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Constructive possession means to have "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." Shaw, 37 S.W.3d at 903 (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). This Court has stated that "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient." State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) (citing State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)). Our supreme court has stated, however, that "a person in possession of the premises where controlled substances are found may also be presumed to possess the controlled substances themselves." State v. Ross, 49 S.W.3d 833, 846 (Tenn. 2001) (citing Armstrong v. State, 548 S.W.2d 334 (Tenn. Crim. App. 1976)).

At trial, Detective Robinson testified that he had received a tip from a confidential informant that the Defendant and another individual, Smith, were selling drugs from a location later determined to be the Defendant's residence. The confidential informant later made a "controlled buy" of thirteen grams of marijuana from this location. Upon execution of a search warrant at the Defendant's residence, Detective Robinson and his team found, among other items, marijuana[2] and crack cocaine. When the team first knocked at the door of the Defendant's residence and announced that they were police, both the Defendant and Smith were sitting on a couch in the living room. Later, after the police officers secured the Defendant and Smith, they found the marijuana on a table and inside a clock in the living room. Given the presumption of possession of substances by one who possesses the premises, see Ross, 49 S.W.3d at 846, and the lack of evidence in the record to rebut that presumption, we conclude that sufficient evidence existed for a jury to find the possession component of these convictions.

The Defendant also contends that the State's evidence was not sufficient to establish the requisite intent. In assessing the purpose for the possession of a controlled substance,

> [i]t may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the

---

[2] Detective Robinson testified that the detectives found forty (40) grams of marijuana at the Defendant's residence. Special Agent Harris testified that the sample she tested contained 17.13 grams of marijuana. Additionally, her forensic report stated, "No analysis was performed on additional plant material. The gross weight of this additional plant material is 21.08 grams. The total weight for all the plant material would not exceed 10 pounds."

arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. . . .  The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

Tenn. Code Ann. § 39-17-419 (2006).

At trial, Detective Robinson testified that usually marijuana users buy enough for a "blunt," which is a marijuana cigarette that contains approximately 0.5 grams of marijuana. This amount would cost approximately $5.  Therefore, Detective Robinson associated possession of as great a quantity of marijuana found in this case with the possessor's having the purpose to sell it.  Moreover, Detective Robinson stated that the officers found scales and "baggies" at the Defendant's residence.  He noted that "baggies" and scales were "common in drug houses" because buyers might want the drugs weighed in front of them before paying money.  Finally, Detective Robinson testified that his confidential informant participated in a controlled buy at the Defendant's residence, from which the confidential informant purchased thirteen grams of marijuana.  Based on this testimony, the jury had sufficient evidence to determine that the Defendant had the requisite intent required for this offense.

Therefore, viewing the evidence with the strongest legitimate view in favor of the State, see Harris, 839 S.W.2d at 75, we conclude that the State introduced sufficient evidence for a jury to convict the Defendant of possession with intent to sell and deliver 14.175 grams or more of marijuana.  Accordingly, the Defendant is entitled to no relief on this issue.

**CONCLUSION**

For the reasons set forth above, we affirm the judgments of the trial court.

_____
JEFFREY S. BIVINS, JUDGE