IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs March 24, 2020

**STATE OF TENNESSEE v. STEPHEN DAMIAN LEDET**

**Appeal from the Circuit Court for Anderson County**
**No. B6C00174      Donald Ray Elledge, Judge**

———————————————————

**No. E2019-00909-CCA-R3-CD**

———————————————————

Stephen Damian Ledet, Defendant, was convicted by a jury of possession of a Schedule II controlled substance for resale and tampering with evidence. On appeal, Defendant claims the evidence was insufficient to sustain the convictions. After review of the record and briefs, we affirm the convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and THOMAS T. WOODALL, J., joined.

Stephanie M. Jernigan, Maryville, Tennessee, for the appellant, Stephen Damian Ledet.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Dave S. Clark, District Attorney General; and Anthony Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Jury Trial*

Oak Ridge Police Department (ORPD) Officer Timothy Allen Buckner testified that on April 13, 2016, he was on patrol when he saw a vehicle with the passenger-side brake light "busted off." He said the lamp "illuminated white from the rear of the vehicle." Officer Buckner initiated a stop. He advised Defendant, who was the driver, why he stopped the vehicle and asked him for his driver's license, registration, and proof

of insurance. He said that Defendant was visibly shaking as he reached for the documents and would not make eye contact or speak to him. The passenger identified herself as Anita Stevens. He said that he was concerned by Defendant's conduct. He returned to his patrol car and ran Defendant's license through his data base.

Once backup arrived, Officer Buckner asked Defendant to exit the vehicle. He asked Defendant "if there [was] anything illegal in the vehicle, most importantly weapons and then went into narcotics." When Defendant answered "no," Officer Buckner asked for permission to search, and Defendant consented. Officer Buckner radioed Officer Ray Steakley and asked him "to bring his K-9 partner Bika on scene to do an exterior vehicle sniff of the car." He then spoke to Ms. Stevens through the passenger-side window. He told her that Defendant said she had "narcotics on her." Officer Buckner testified that was not true and that Defendant never said that. He then "asked [Ms. Stevens] if she had anything on or in her." Ms. Stevens initially denied having any drugs. After the dog alerted on the vehicle, she admitted she had drugs "in her." Officer Buckner contacted Officer Sandy Bell and asked her to come to the scene. Outside the presence of the male officers, Officer Bell retrieved a silver cylinder from Ms. Stevens' vagina and delivered it to Officer Buckner. Officer Buckner examined the contents of the cylinder, which contained four corner bags of a crystalline substance. Based on his training, he said that the substance appeared to be crystal methamphetamine.

Officer Buckner took both individuals into custody and advised them of their *Miranda* rights. Defendant asked Officer Buckner "if he took the charge, what would his outcome be." Defendant then stated that "he didn't know she had [the methamphetamine] on her and then he went back and said he did." Officer Buckner said that he told Defendant to not say the methamphetamine was his "just to help her out, [and that he] want[ed] the honest truth about it." Defendant was placed in Officer Buckner's patrol car and transported to the police station.

On cross-examination, Officer Buckner acknowledged that he "had previous interactions with [D]efendant and Ms. Stevens[.]" Officer Buckner agreed that many of the people he stops are nervous.

Officer Sandy Bell testified that she was called to the scene by Officer Buckner because a female officer was required to perform a cavity search of a female. She said that it was not uncommon for a female to hide drugs in her vagina. Once she retrieved the silver cylinder, she turned it over to Officer Buckner.

Lieutenant Matthew Tedford testified that he drove the evidence to the Tennessee Bureau of Investigation (TBI) Crime Laboratory in Knoxville.  TBI Special Agent Carl Smith testified as an expert in forensic chemistry.  He analyzed the evidence and confirmed that "the crystalline substance" contained in four Ziploc corner bags was methamphetamine and that the total weight was "two and a half grams."

Anderson County Sheriff's Department Deputy Simon Burn testified that he was assigned to the Seventh District Drug Task Force.  He said that methamphetamine is often sold in the corners cut from Ziploc bags.

Ms. Stevens testified that she was dating Defendant at the time of her arrest.  She said that neither she nor Defendant was working at that time.  She admitted that she had three prior felony convictions.  She said that she knew that Defendant had methamphetamine in the car.  She said that Defendant stated, "[T]here's cops, shove this" and handed her a metal container filled with methamphetamine.  She knew Defendant wanted her to put the container in her vagina.  She said that she had hidden drugs like that before.  She said that the methamphetamine was for Defendant to sell and for their personal use.  She said they paid twenty dollars per one-tenth of a gram of methamphetamine.  She said Officer Buckner told her that Defendant had told him "that I had something on me."  She said she thought Defendant "told on [her]."  She continued to deny that she had drugs in her possession until the dog alerted on the vehicle.  She said, "[T]here [wa]s no further point of me having them go through getting a court order to take me to a hospital and have it removed from me."  When Officer Bell arrived, Ms. Stevens retrieved the cylinder and handed it to her.  Ms. Stevens was charged and pled guilty without any "promise" as to her sentence.  At the time of the trial, Ms. Stevens was on probation and was going to college.  She had no probation violations in the two and one-half years since her arrest.

On cross-examination, Ms. Stevens said that she knew the container had methamphetamine in it because she and Defendant had used methamphetamine from that container that morning.  She said that her relationship with Defendant ended "then and there," referring to the arrest.  She spent 120 days in jail before she was released.

After a *Momon* hearing, Defendant elected not to testify.  Defendant called his father, Ronald Ledet.  Ronald Ledet testified that he had legal issues with Ms. Stevens, but the trial court did not allow Mr. Ledet to go into detail about those issues.

The jury convicted Defendant of possession of a Schedule II controlled substance for resale (count one) and tampering with evidence (count two).  The trial court sentenced Defendant to concurrent terms of eleven years in count one and five years in count two and ordered the sentences to be served in the Department of Correction.  Defendant timely appealed.

**Analysis**

In this appeal, Defendant contends that the evidence presented at trial was insufficient to sustain his convictions for possession of Schedule II controlled substance for resale and tampering with evidence. The State argues that there was sufficient evidence to sustain the convictions. We agree with the State.

***Standard of Review***

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id*. Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). "A jury verdict approved by the trial judge accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State's theory." *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983).

***Possession of Schedule II Controlled Substance for Resale***

It is an offense to knowingly possess a controlled substance with the intent to sell or deliver the controlled substance. Tenn. Code Ann. § 39-17-417(a)(4) (2019). A person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b) (2019).

Defendant argues that he did not have possession of the controlled substance because he did not have the power and intent to exercise control over the cylinder of methamphetamine that was in Ms. Stevens' vagina. We agree that Ms. Stevens, not

Defendant, was in actual possession of the methamphetamine at the time law enforcement officers obtained the cylinder from Ms. Stevens. However, "in criminal cases, a possession element may generally be established by showing actual or constructive possession." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014). Actual possession refers to physical control over an item, whereas constructive possession "requires that a person knowingly have 'the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.'" *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981) (quoting *United States v. Craig*, 522 F.2d 29 (6th Cir. 1975)); *see also State v. Shaw,* 37 S.W.3d 900, 903 (Tenn. 2001). "Constructive possession depends on the totality of the circumstances in each case." *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013). Neither the "mere presence" of an individual in an area where drugs are found, nor the "mere association" of an individual with a person in control of the drug "is sufficient, standing alone, to find constructive possession." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987); *see also State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000).

Ms. Stevens testified that, when Officer Buckner initiated the traffic stop, Defendant gave her the cylinder containing the methamphetamine and said, "[T]here's cops, shove this." Based on her previous experience, she understood that Defendant was telling her to conceal the cylinder in her vagina. Ms. Stevens testified that the methamphetamine was for Defendant to sell and for their personal use. Defendant first stated to Officer Buckner that he did not know that Ms. Stevens had the methamphetamine on her but then admitted that he knew she did. During his conversation with Officer Buckner, Defendant said that "it was his and then said it wasn't his." Officer Buckner said that Defendant waivered several times about whose methamphetamine it was.

The evidence was sufficient for the jury to determine that Defendant had actual possession of the cylinder of methamphetamine before Officer Buckner initiated the traffic stop, that Defendant directed Ms. Stevens to conceal it in her vagina, and that he intended to reobtain actual possession from Ms. Stevens if the police failed to discover the drugs. The evidence was sufficient for the jury to find that Defendant had "the power and intention . . . to exercise dominion and control over" the methamphetamine. *Williams*, 623 S.W.2d at 125 (internal quotation marks omitted).

### *Tampering with Evidence*

Tenn. Code Ann. § 39-16-503(a)(1) (2019) defines the offense of tampering with physical evidence as follows:

(a) It is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to:

> (1) [a]lter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. . . .

Defendant had control over the cylinder of methamphetamine. When he realized that he was being stopped by the police, he directed Ms. Stevens to conceal the methamphetamine. The evidence was sufficient for the jury to determine that Defendant, knowing that an investigation was imminent, took steps to conceal evidence of a crime.

## Conclusion

There is sufficient evidence to sustain the convictions. The judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE