# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 22, 2009 at Knoxville

## STATE OF TENNESSEE v. COREY DANIELLE WELLMAN

**Appeal from the Criminal Court for Davidson County**
**No. 2005-D-2942     Monte Watkins, Judge**

_____

**No. M2008-01843-CCA-R3-CD - Filed December 7, 2009**

_____

A Davidson County Criminal Court jury convicted the defendant, Corey Danielle Wellman, of one count of possessing with intent to sell .5 grams or more of cocaine, one count of possession of drug paraphernalia, one count of attempted felony possession of a weapon, and one count of introducing contraband into a penal facility. The defendant appeals his convictions, maintaining that the trial court erred in denying his motion to suppress evidence that he argues resulted from an illegal search. The defendant also challenges the sufficiency of evidence for all his convictions except for his introducing contraband into a penal facility conviction. We hold that the defendant has waived his suppression issue. We affirm the judgments of the trial court regarding his drug and drug paraphernalia convictions, and we reverse his attempted felony possession of a weapon conviction, and dismiss that charge.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed in Part; Reversed and Dismissed in Part**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Corey Danielle Wellman.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Hugh Ammerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case results from the August 15, 2005 arrest of the defendant following an anonymous call to the Metropolitan Nashville Police Department ("Metro Police") that the defendant was selling drugs on Aspen Drive in Nashville, Tennessee. Officers investigated and observed the defendant's vehicle surrounded by four males, and one man fled upon seeing the Metro Police officers. When the officers pursued him, the defendant then fled the scene in his vehicle, but another

officer eventually stopped and arrested him. A search of the defendant's vehicle produced digital scales, plastic bags, and a handgun. During a strip search of the defendant conducted as a part of the booking process at the Davidson County Criminal Justice Center, officers recovered a plastic bag containing 4.7 grams of rock cocaine and .2 grams of powder cocaine.

A Davidson County grand jury indicted the defendant for possessing with intent to sell or deliver .5 grams or more of a substance containing cocaine, a schedule II drug, *see* T.C.A. § 39-17-407 (2003), possession with intent to use drug paraphernalia, *see id.* § 39-17-425, possession of a handgun by a previously convicted violent felon, *see id.* § 39-17-1307, and taking contraband into a penal facility, *see id.* § 39-16-201. The defendant moved to suppress the evidence resulting from those searches conducted following his arrest, and the trial court denied his motion. After a two-day trial, the jury convicted the defendant of all crimes as charged except it convicted him of the lesser-included offense of attempted felony possession of a handgun. *See id.* § 39-12-101. The trial court sentenced the defendant to 14 years' incarceration with the Tennessee Department of Correction ("TDOC") for his Class B felony conviction of possession of cocaine with intent to sell. The court also sentenced the defendant to seven years in TDOC for his Class C felony conviction of taking contraband into a penal facility. Finally, the court ordered an 11 month, 29 day sentence for each of the defendant's remaining Class A misdemeanor convictions. The trial court ordered all sentences to be served concurrently and entered judgments of conviction on May 2, 2008.

The defendant filed his motion for new trial on June 2, 2008, which the trial court denied by minute entry on July 17, 2008. The defendant filed a timely notice of appeal on July 17, 2008.

*Suppression Hearing*

At the pretrial suppression hearing, Metro Police Officer Thomas H. Meeks testified that he was on patrol on August 15, 2005, when he received "[a] dispatch call . . . from an anonymous female" regarding the defendant's involvement with drug activity. Officer Meeks went to the location of the reported activity and observed four African-American males standing around a Grand Marquis vehicle. Officer Meeks pulled his cruiser along the opposite side of the street, and one of the men ran away. Officer Meeks testified that the man ran around the back end of a house and that he and his partner eventually arrested the man after a short foot pursuit. Officer Meeks identified the man as Jamar Scott, and after placing him in the police cruiser, he retraced Mr. Scott's steps and located a loaded nine millimeter handgun "on the top of a bush."

Officer Meeks identified the defendant, and he testified that he initially observed him standing outside the drivers' side door of the Grand Marquis. Officer Meeks stated that, as he chased Mr. Scott, he heard the Grand Marquis "pull off," and he radioed other officers in the area to stop the vehicle.

Detective Brian Clark testified that he was a patrol officer on August 15, 2005, when he received information that the defendant was selling narcotics from his vehicle on Aspen Street.

The notice also described the defendant, his clothing, and his vehicle. Detective Clark explained that he had previously encountered the defendant and that his cruiser's on-board computer identified the defendant as a convicted felon. Detective Clark stated that, on his way to the scene, he heard Officer Meeks over his radio stating that the defendant had fled toward the intersection of Aspen Street and 28th Street and that Officer Meeks had recovered a gun from the scene. Detective Clark encountered the defendant driving the vehicle on Aspen. At that point, Detective Clark exited his cruiser and asked the defendant to get out of his car. The defendant exited his vehicle, and Detective Clark placed him under arrest.

Detective Clark testified that a search of the vehicle produced a large amount of plastic bags, a set of digital scales, and a loaded nine millimeter handgun. He stated that he found $300 cash on the defendant's person.

In a written order filed June 1, 2007, the trial court denied the defendant's motion to suppress. The court made the following findings of fact,

> On August 15, 2005, Metropolitan Police Officers received a call that [the defendant] was armed in a vehicle around 2600 Aspen Dr. selling drugs. When Officers Thomas Meeks and Brian Clark arrived to investigate the call, they observed four African American males standing outside of a vehicle that was described in the dispatch call. As they approached, the one of the individuals beg[a]n to flee when the officers asked to speak with him. After the individual was arrested, the defendant was arrested pursuant to a search incident to arrest. A search incident to the arrest revealed, a loaded 9mm handgun in the vehicle, a set of digital scales and several plastic baggies. During a search of the defendant at the Criminal Justice Center, seven grams of a white rock substance were located in his buttocks area.

The trial court then reasoned that the call came from a "citizen informant" and presumed the call reliable. *See State v. Melson*, 638 S.W.2d 342, 353 (Tenn. 1982). The court further noted that the vehicle and activity matched that described in the dispatch call. The trial court stated, "[T]he police had ample specific and articulable facts upon which to base a reasonable suspicion that the defendant was involved in criminal activity, specifically, selling drugs with a gun. The citizen-informant's initial call and the subsequent collaborated [sic] observations of law enforcement are presumed reliable." The trial court determined that the investigatory stop of the defendant was appropriate and denied the defendant's motion to suppress.

*Trial*

Detective Clark testified largely in line with his suppression hearing testimony. He stated that on August 15, 2005, when he first encountered the defendant driving the vehicle, he

"beeped [his] siren" then ordered him out of the vehicle. Detective Clark explained that, upon searching the defendant's vehicle incident to arrest, he found a set of digital scales on the floorboard of the vehicle's passenger side. The State introduced the digital scales, which displayed a white residue. Detective Clark testified that he found a loaded handgun in the vehicle's glove box. He also located several small plastic bags in the vehicle. He explained that often drug dealers break down large quantities of drugs into smaller quantities and place the small amounts in the corners of plastic bags. Detective Clark also testified that he did not recover any crack-smoking device from the vehicle. Detective Clark testified that a search of the defendant's person during his arrest produced $681 cash. He stated that the defendant had 17 bills of $20 denomination. He also testified that he found no drug-use paraphernalia on the defendant's person.

Detective Clark testified that he prepared an arrest report and learned that the defendant was unemployed. He then took the defendant to Davidson County's Criminal Justice Center for booking. He explained that the Criminal Justice Center held a penal institution "[s]urrounded by gates, alarm, closing doors, [and] armed guards." He explained that, after using his access card to enter a secured area with the defendant, he took the defendant to a room for conducting searches of inmates' bodies. Detective Clark said, "I wanted to search him based on everything we had from the stop, the evidence that we had, the circumstances, his demeanor in speaking with him and asking if he had any narcotics on his person." Although the defendant told the officers he had no narcotics, a strip search of the defendant produced a plastic bag containing cocaine concealed near his buttocks. Detective Clark stated that a rock substance in the bag was consistent with crack cocaine. Also, the bag contained a $20 bill folded "to form its own baggy" to contain a small amount of what appeared to be powder cocaine. He sent the drugs to the Tennessee Bureau of Investigation ("TBI") for further analysis.

On cross-examination, Detective Clark admitted that he never verified whether the vehicle driven by the defendant actually belonged to the defendant. He clarified that he found most of the plastic bags in a pocket in the back seat of the vehicle, but he maintained that some bags were in the front passenger side of the vehicle near the digital scales. Detective Clark admitted that a rolled up dollar bill may be used by drug users to ingest cocaine; however, he stated that the $20 bill found in the bag with the cocaine on the defendant's person was folded, not rolled.

TBI Special Agent Cassandra Franklin testified that, on March 30, 2006, she analyzed the rock and powder substance from the bag found on the defendant's person. She stated that the rock substance contained 4.7 grams of cocaine base material and that the folded $20 bill contained .2 grams of cocaine. She testified that the bag contained a total amount of 4.9 grams cocaine. The State exhibited the TBI laboratory report during Agent Franklin's testimony.

Loretta Marsh testified that she had worked for Metro Police doing fingerprint analysis for more than 10 years. She testified that she located latent fingerprints on the handgun found in the vehicle driven by the defendant; however, she testified that the prints were of no value in making a positive identification of anyone who handled the gun. She testified that 30 to 50 percent of the total latent prints that she analyzed had no identification value.

-4-

Metro Police Lieutenant William Mackall testified that he had 12 years' experience with drug cases in Nashville. He testified that he had participate in hundreds of drug transactions as an undercover officer and that he was knowledgeable of Nashville's illegal drug market. Lieutenant Mackall stated that he reviewed several documents including arrest reports and incident reports regarding the present case. The trial court certified Lieutenant Mackall as a "police expert in narcotics."

Lieutenant Mackall testified that the present case displayed many "indicia of sale." He stated that the manner in which the cocaine was hidden on the defendant's person, the digital scales, the plastic bags, and the handgun indicated that the defendant sold narcotics. He explained that generally cocaine is sold on the street in .2 gram portions for $20. He agreed that 4.9 grams of cocaine is "about [24] and a half times the amount of a single dose" of cocaine. He estimated that the total value of the cocaine found with the defendant ranged from $200 to $500, depending on the market conditions. He estimated that the value at the time of arrest was approximately $200. He stated that he had never encountered a "user" who possessed such a large quantity of cocaine.[1] He further commented that the method in which the defendant hid the bag of cocaine from the police is common, and that he had seen drug dealers use this method "[h]undreds of times."

Lieutenant Mackall explained that digital scales were commonly used by drug dealers to measure out "twenties" – .2 gram units of cocaine for resale. He stated that digital scales were especially important for a drug dealer to accurately measure the product sold and prevent under-charging for the narcotics. He maintained that he had never known a drug user to carry a digital scale. He also testified that the small plastic bags indicated drug trading.

Lieutenant Mackall then explained that the use of firearms in trading drugs is common because the industry is a "dangerous trade." He also stated that drug dealers commonly have a large amount of cash on their persons and that dealers carry small denominations, most commonly $20 bills. He further noted that users generally have no money or only enough money to purchase drugs on their person. Lieutenant Mackall also said, "[N]inety-nine percent of the time, the drug users that I have come in contact with had a crack pipe on their person." Lieutenant Mackall concluded that, in his expert opinion, the defendant possessed the 4.9 grams cocaine for resale.

On cross-examination, Lieutenant Mackall admitted that an "eight ball" was a common unit of cocaine sold on the streets. He explained that an "eight ball" was an eighth of an ounce, or roughly 3.5 grams, of cocaine. He also admitted that drug dealers commonly place a user's change from a drug transaction in the plastic bag with the drugs.

---

[1] Lieutenant Mackall referred to a drug "user" as a customer of a drug dealer. Thus, "user" refers to one solely possessing narcotics for personal use, whereas "dealer" refers to a person engaged in the sale and/or distribution of narcotics.

The defendant's mother, Peggy Wellman, testified that the defendant was at her home on August 15, 2005. She stated that she gave the defendant $600 cash to pay her telephone, power, and water bills for her. She said, "I gave him [$150] for himself. And I gave him [$200] to pay on my light bill, [$200] on my phone, and [$50] on the water bill." She stated that she gave him the money in an envelope.

On cross-examination, Ms. Wellman could not recall whether the defendant lived with her or his father at the time. She explained that she had given the defendant money to pay her bills on other occasions. Ms. Wellman stated that, on August 15, she gave the defendant the money sometime during the morning and that the defendant's wife informed her that he had been arrested a "good hour" later; however, she also testified that she believed that the defendant was arrested in the evening hours. She also stated that the defendant was unemployed at the time of arrest.

Jawane Beasley testified that he was at the scene with the defendant on August 15, 2005. He testified that he was inside the vehicle in the front passenger's seat when the defendant was outside the driver's side door. He stated that he placed a gun, which was in the seat, into the glove box. He maintained that he did not do this at the request of the defendant and that the defendant was not aware of his placing the gun in the glove box. Mr. Beasley testified that, upon seeing Metro Police officers at the scene, he walked away from the vehicle. He was not arrested at that time, but he admitted that he had been granted immunity from arrest based upon his role in the incident. On cross-examination, Mr. Beasley maintained the gun was not his and that he found it in the seat of the vehicle.

The defendant chose not to testify, and based upon the evidence as summarized above, the jury convicted the defendant on all counts, but it convicted him of the lesser-included offense of attempted felony possession of a weapon.

*Issues on Appeal*

The defendant appeals his convictions on two grounds. First, he avers that the trial court erred in denying his motion to suppress evidence. Second, he attacks the sufficiency of the convicting evidence. He does not challenge the length or manner of service of his sentences.

*I. Denial of Motion to Suppress*

The defendant argues that the evidence resulting from the defendant's arrest and subsequent searches incident to his arrest should have been suppressed because the Metro Police officers violated his Fourth Amendment rights. The defendant argues, "There was neither probable cause nor reasonable suspicion to stop [him] in that particular situation, with unreliable, anonymous information being given to the police." He further argues that he had no duty to stop his vehicle and that this court "should suppress the stop of the [defendant] along with the fruits of this illegal stop and seizure." The State notes that the defendant cites no legal authority in his brief. *See* Tenn. R. App. P. 27(a)(7) (requiring the arguments within a brief contain "citations to the authorities . . .

-6-

relied on . . . .”).  We agree that, besides a broad mention of the Fourth Amendment of the U.S. Constitution, the defendant makes no substantive legal argument regarding this complex area of the law.  As a result, we will treat this issue as waived, *see* Tenn. Ct. Crim. App. R. 10(b), and we will not address this issue on its merits.

## II.  Sufficiency of the Evidence

The defendant challenges the legal sufficiency of the convicting evidence for his convictions of possession with intent to sell .5 grams or more of cocaine, possession of drug paraphernalia, and attempted felony possession of a weapon.  The State maintains that the evidence adduced at trial amply supported the jury's verdicts.  When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003).  The rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence.  *Winters*, 137 S.W.3d at 654.

In determining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact.  *Id.* at 655.  Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact.  *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  Significantly, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence.  *Id.*

### A.  Possession with Intent to Sell .5 Grams or More of Cocaine

The defendant first argues that the State failed to prove beyond a reasonable doubt that he intended to sell or deliver the cocaine substances located on his person.  He argues that the $20 bill located in the bag with the drugs showed that the cocaine was for his personal use because rolled up dollar bills are commonly used to ingest cocaine.  Further he argues that the large sum of cash found on his person was clearly not drug revenue, as shown by his mother's testimony.

"It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to . . . sell the controlled substance," *see* T.C.A. § 39-17-417(a)(4) (2003), and cocaine and any derivative of cocaine, including rock cocaine, is a Schedule II controlled substance, *see id.* § 39-17-408(b)(4).  Furthermore, "[i]t may be inferred from the amount of controlled substance or substances possessed by an offender, along with other relevant facts surrounding arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." *See id.* § 39-17-419.

The evidence established that the defendant possessed 4.7 grams of cocaine rock and .2 grams of powder cocaine. Further, a digital scale, plastic bags, and a loaded handgun were found in the defendant's vehicle. The defendant also carried more than $600 cash, including $340 in $20 bills. Lieutenant Mackall, a police expert in narcotics, explained that the cocaine found on the defendant grossly exceeded any amount that he had encountered for personal use. He further explained that drug dealers commonly sold cocaine in $20 units and that the cocaine found on the defendant's person was worth approximately $200. Lieutenant Mackall found the method in which the defendant concealed the cocaine common in the sale of drugs. He further noted that the police did not recover a crack pipe from the defendant, showing that the defendant possessed the cocaine for sale and not for use. Lieutenant Mackall also opined that the digital scales, bags, and handgun were "indicia of sale." The jury clearly discredited Ms. Wellman's testimony that the defendant possessed a large sum of money in order to pay her bills. We will not reweigh the evidence, and we will not disturb the verdict of the trial court.

### B. Possession of Drug Paraphernalia

The defendant next challenges his conviction of possession of drug paraphernalia, and he claims that the State failed to prove that he actually possessed the digital scales found on the floorboard of the vehicle that he operated prior to his arrest. Tennessee's Drug Control Act makes it illegal "to use, or to possess with intent to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this part." *Id.* § 39-17-425(b)(1).

At issue here is whether sufficient evidence established that the defendant possessed the digital scales found on the floorboard of the passenger's side of the vehicle. Possession of drugs or drug paraphernalia may be either actual or constructive. *See State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *State v. Jerion Craft*, No. W2008-00869-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Jackson, Aug. 27, 2009). A person constructively possesses a controlled substance when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Said differently, constructive possession is the "ability to reduce an object to actual possession." *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient." *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) (citing *Cooper*, 736 S.W.2d at 129).

Applying the inferences from the evidence most favorable to the State, we conclude that the evidence was sufficient to establish that the defendant constructively possessed the drug paraphernalia. The digital scales were found in the passenger side floorboard of the vehicle being driven by the defendant. The evidence suggested the use of these scales in the distribution of drugs from the vehicle. The defendant posits that Mr. Beasley's testimony shows that Mr. Beasley "dump[ed] anything illegal . . . into the car"; however, we note that the jury clearly did not credit this

theory of the case. The jury clearly credited the evidence establishing that the defendant possessed and used the digital scales for the sale of drugs, and we will not disturb the jury's verdict.

## C. Attempted Felony Possession of a Weapon

The defendant argues that the convicting evidence did not establish his conviction of attempted possession of a weapon because the evidence established that Mr. Beasley placed the handgun in the vehicle's glove box. The State argues that the defendant's driving the vehicle with the loaded weapon supports the conviction. We agree with the State; however, we do not concern ourselves with the "attempted possession" element of the crime. Our review of the trial record shows that the prosecution presented no evidence to establish that the defendant was a convicted felon and that, therefore, the State failed to prove an essential element of the crime.

The Davidson County grand jury indicted the defendant for possessing a handgun while having been previously convicted of "a felony involving the use or attempted use of force, violence or a deadly weapon." *See* T.C.A. § 39-17-1307(b)(1)(A). The petit jury convicted the defendant of the lesser-included offense of attempt to possess a handgun as a convicted felon. *See id.* § 39-12-101. However, the record is devoid of any judgment of conviction or stipulation stating that the defendant had been previously convicted of the prerequisite felony.

During preparation of the jury instructions, the trial court, the State, and defense counsel discussed the correct jury charge for felon possession of a handgun.

> [The State]: This is a little unusual due to the bifurcation of the trial that has to be done, but I – what needs to be taken out is, "any person who unlawfully possesses a prohibited weapon." It's not unlawful to possess a handgun in the State of Tennessee. And all the State has to proof [sic] at this point in the trial is that he possessed a gun. And it's a strict liability crime. . . .

> THE COURT: No. It says any person who unlawfully possesses. It's lawful to possess, but in this instance it's unlawful for him to possess it.

> [The State]: But none of that evidence has been put before the jury, and that's why I fear the potential of confusion. Unless I am mistaken I am only required to prove that he possessed it and later his possession would be proved unlawful by the fact that he is a convicted felon.

> . . . .

[The State]: And my argument would be that the initial instruction should simply read that he possessed a handgun, and everything else could only lead to confusion. Because I can easily see the jurors getting back there and saying, it's not illegal to have a handgun in the state of Tennessean [sic], there is no proof that this was any type of prohibited weapon.

The State further discussed only including an initial jury instruction regarding possession of a handgun, then having a bifurcated portion of the trial to prove the latter element of having a prior felony conviction. The instruction ultimately given to the jury read,

Possession of a Weapon: Any person who unlawfully possesses a weapon is guilty of a crime.

For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
(1) that the defendant possessed a handgun; and
(2) that the defendant acted intentionally or knowingly.

The court further instructed the jury on the lesser-included offense of attempted possession of a weapon.

Upon the jury's returning a verdict of guilty for attempted possession of a weapon, the trial court failed to conduct a second phase of the trial in order for the State to prove the defendant's status as a convicted felon. We also note that the State did not make any such request. The jury was then dismissed.

Under these circumstances, we cannot say that the State proved an essential element of the offense of attempted felony possession of a handgun pursuant to Tennessee Code Annotated section 39-17-1307(b)(1)(A); *see* T.C.A. § 39-12-101(a) (defining criminal attempt). The indicted offense required that the State prove that the defendant had been previously convicted of "a felony involving the use or attempted use of force, violence or a deadly weapon." *See id.* § 39-17-1307(b)(1)(A). Nothing in the trial record shows that the State proved this element before the jury. In fact, the prosecutor's discussion with the trial court admits that he intentionally avoided proving this element in reliance on a bifurcated trial on the weapons charge. Thus, we reverse the defendant's conviction of attempted felony possession of a weapon.

At this time, we will evaluate whether any lesser-included offenses apply. From our reading of Tennessee's law regarding weapon possession, there is no lesser-included offense for attempted felony possession of a handgun. The statute governing the unlawful carrying of a weapon includes definitions for Class A and C misdemeanors and Class E felonies. *See* T.C.A. § 39-17-1307. The offense for which the defendant was indicted is a Class E felony, *see id.* § 39-17-

-10-

1307(b)(1)(A), and the jury convicted him of criminal attempt of the statute, resulting in a Class A misdemeanor. The only possible lesser-included offense would be the offense listed in Code section 39-17-1307(a)(1), "A person commits an offense who carries with the intent to go armed a firearm . . . ." *Id.* § 39-17-1307(a)(1). However, our supreme court has explained our state's approach to lesser-included offenses:

> This Court fashioned the test for determining whether an offense is a lesser-included offense in *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999).
>
> An offense is a lesser-included offense if:
>
> (a) all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing
>> (1) a different mental state indicating a lesser kind of culpability; and/or
>> (2) a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c) it consists of
>> (1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>> (2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
>> (3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).
>
> *State v. Burns*, 6 S.W.3d at 466-67. Where "a lesser offense is not included in the offense charged, then an instruction should not be given, regardless of whether evidence supports it." *State v. Burns*, 6 S.W.3d at 467. Thus, if the purported lesser-included offense is not actually a lesser-included offense, then the court's inquiry ends.

*State v. Banks*, 271 S.W.3d 90, 124-25 (Tenn. 2008). Code section 39-17-1307(a)(1)'s requirement of "intent to go armed" creates an additional element with greater culpability than the simple "possession" required in the indicted defense. Pursuant to *Burns*, a violation of Code section 39-17-1307(a)(1) cannot be a lesser-included offense of felony possession of a handgun.

Because we hold no lesser-included offenses applicable to the defendant's conviction of attempted felony possession of a handgun, and because we reverse his conviction, we hold that the trial court shall dismiss the charge.

*Conclusion*

We affirm the defendant's convictions of possession of .5 grams or more of cocaine with intent to sell and possession of drug paraphernalia. We reverse his conviction of attempted felony possession of a weapon, and dismiss that charge.

_____
JAMES CURWOOD WITT, JR., JUDGE