IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 12, 2015

## STATE OF TENNESSEE v. EMMANUEL BIBB HOUSTON

**Appeal from the Circuit Court for Bedford County**
**No. 17455     F. Lee Russell, Judge**

_____

**No. M2014-00202-CCA-R3-CD – Filed December 11, 2015**

_____

Following a jury trial, the Defendant-Appellant, Emmanuel Bibb Houston, was convicted as charged in count 1 of possession of a Schedule VI drug with intent to sell, a Class E felony; in count 2 of possession of a Schedule VI drug with intent to deliver, a Class E felony; in count 3 of possession of a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony, a Class D felony; and in count 4 of possession of drug paraphernalia, a Class A misdemeanor. See T.C.A. §§ 39-17-417(a), -1324(a), -425(a)(1). The trial court merged count 2 with count 1 and imposed an effective sentence of six years. Houston's sole issue on appeal is that the evidence is insufficient to sustain his felony convictions. Upon our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Christopher P. Westmoreland, Shelbyville, Tennessee, for the Defendant-Appellant, Emmanuel Bibb Houston.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Robert J. Carter, District Attorney General; and Michael D. Randles and Richard A. Cawley, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

Initially, we must address the State's claim that this appeal should be dismissed because Houston did not file a timely notice of appeal within thirty days of the trial court's order denying his motion for new trial. However, a careful review of the record

shows that Houston sought and obtained a waiver of the thirty-day deadline to file the notice of appeal but did not file his notice of appeal within the fifteen-day deadline set by this court in its order. In order to determine whether the interest of justice mandates waiver of this fifteen-day deadline, we must briefly summarize the procedural history of this case.

On September 20, 2013, the trial court sentenced Houston and entered judgments of conviction. That same day, Houston orally moved for a new trial, and the trial court, after hearing arguments, denied the motion for new trial and entered an order to that effect on September 24, 2013. The order denying the motion for new trial appointed defense counsel to represent Houston on appeal; ordered the court reporter to transcribe the trial, sentencing hearing, and motion for new trial hearing within ninety days of the notice of appeal; and ordered defense counsel to notify the court reporter of Houston's appeal by mailing the court reporter a copy of the notice of appeal after it had been filed. On October 1, 2013, Houston filed a motion for new trial that reduced to writing the arguments he had made at the motion for new trial hearing.

On January 31, 2014, Houston, through defense counsel, filed a Motion to Allow Late Filing of Notice of Appeal, stating only that he did not timely file the notice of appeal and that the Attorney General's office had no objection to the motion.[1] On February 21, 2014, the Tennessee Court of Criminal Appeals entered an order waiving the thirty-day deadline for filing the notice of appeal and giving Houston fifteen days from the date of the order to file a notice of appeal in the trial court. The record shows that while two notice of appeal documents were filed in the trial court, they were not filed until July 3, 2014, approximately four months after the deadline set by this court. The first of these notice of appeal documents was filed on July 3, 2014, although it was dated January 29, 2014, and the certificate of service showed that the document had been forwarded to the State on January 29, 2014. The second notice of appeal document, which varied in form from the first, was also filed in the trial court on July 3, 2014, but was not stamped "Received" by the Clerk of the Appellate Courts until July 18, 2014.

On December 1, 2014, the Clerk of the Appellate Courts sent a notice to the Bedford County Circuit Court Clerk stating that the time for filing the record in Houston's case had expired and requesting that the Clerk file the record or notify the Tennessee Court of Criminal Appeals of the status of this appeal within twenty days of the date of the notice. On December 8, 2014, the Bedford County Circuit Court Clerk forwarded a letter to the Clerk of the Appellate Courts requesting additional time to file the record on appeal in Houston's case because of a "[c]lerical error in filing notice of

---

[1] On February 6, 2014, the trial court entered an order requiring defense counsel to "secure the services of a court reporter to transcribe the Trial, Sentencing hearing and hearing upon Defendant's Motion for a New Trial that took place in Bedford County Circuit Court[.]"

appeal[.]" On December 9, 2014, the Tennessee Court of Criminal Appeals entered an order granting the clerk thirty days from the date of the order to transmit the record on appeal.

On January 2, 2015, the Bedford County Circuit Court Clerk forwarded a letter to the Clerk of the Appellate Courts, stating that after talking with defense counsel and the court reporter, she learned that the order for transcript had not been filed with the court reporter and that the court reporter would need an additional sixty days to complete the trial transcript because of a heavy caseload. On January 7, 2015, Houston filed a motion asking this court to allow the late filing of Appellant's Brief because the record had not been filed and asking for an additional sixty days in order to complete the filing of this record. In this motion, Houston asserted that "[t]he transcript of the trial has not been completed as a more specific Order from the court was necessary, and a change in the Clerk's office delayed the discovery of this issue." On January 13, 2015, the Tennessee Court of Criminal Appeals entered an order wherein it noted that the notice of appeal had been filed on July 3, 2014, and gave defense counsel until February 27, 2015, to file the transcript of evidence with the trial court clerk. On January 16, 2015, the trial court entered an order requiring the court reporter to transcribe all trial proceedings, sentencing proceedings, and proceedings related to the motion for new trial so that they might be made a part of the record incident to Houston's appeal.

Tennessee Rule of Appellate Procedure 4(a) states that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." Upon the filing of a motion for new trial, "the time for appeal for all parties shall run from the entry of the order denying a new trial[.]" Tenn. R. App. P. 4(c). However, this rule also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). "'In determining whether waiver is appropriate, this court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case.'" State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (quoting State v. Markettus L. Broyld, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005)). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver." Id. (citing Michelle Pierre Hill v. State, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App., at Nashville, Feb. 13, 1996)).

Here, Houston filed a notice of appeal on July 3, 2014, approximately four months after the deadline set by this court in the order allowing him to file a late notice of appeal. As we previously noted, this court has the authority to waive "in the interest of justice" the timely filing of the Houston's notice of appeal. See Tenn. R. App. P. 4(a). Although

Houston sought and obtained a waiver of the thirty-day deadline to file a notice of appeal, curiously, he has not explained why he did not file his notice of appeal within the fifteen-day deadline set by this court in its order or how waiving this deadline serves the interest of justice. Nevertheless, because it is not entirely clear from the record whether the delayed filing was the result of clerical error, we will waive the timely filing of the notice of appeal in the interest of justice.

The evidence adduced at Houston's June 3, 2013 trial was as follows: Assistant Director Timothy Joe Miller and Lieutenant Shane Daugherty with the 17th Judicial Drug Task Force testified that Houston and lot 99, Bridlewood Trailer Park in Shelbyville, Tennessee, his girlfriend's trailer-home, had been under investigation for over a year prior to the instant offense. Assistant Director Miller explained that he knew Houston prior to the instant offense and that Houston knew him in his capacity as a law enforcement officer. Lieutenant Daugherty knew Houston prior to the instant offense because they played on the same basketball courts together. Given their prior relationship, the officers explained that their encounter with Houston on March 1, 2011, the day of the offense, was cordial. On the day of the offense, the officers had the trailer-home under surveillance for illegal activity. They conducted a traffic stop on an individual who had just left the trailer-home. Assistant Director Miller recovered a $20 bag of marijuana in the car. The driver told him that he purchased the drugs at the trailer-home from "E," which was Houston's nickname. Shortly thereafter, they conducted a knock and talk at the trailer-home, where they encountered Houston. They were dressed in plain clothes, had badges hanging around their necks, guns displayed, and flashlights in hand. The interior door was glass and open. The officers could see inside the trailer-home and announced their presence. Houston, his girlfriend, and another individual were present in the trailer-home. Houston told the officers to "Come in."

Upon entry, the officers were overwhelmed by the smell of burnt marijuana. They asked Houston if they could speak with him privately. Houston led them down a hallway toward the rear of the trailer-home and into a bedroom. They encountered Houston's girlfriend in the hallway, who followed them to the bedroom. Assistant Director Miller explained that they were investigating marijuana distribution and asked for their cooperation and consent to search. At this point, Houston told his girlfriend to "[j]ust hand them that stuff." She then reached into the top drawer of a nightstand and removed several bags of marijuana and a set of digital scales. Houston was advised of his Miranda rights, which he said he understood and waived. Before his girlfriend left the room, Houston said, "She don't [sic] have anything to do with this. This is my stuff." Houston was asked about additional drugs or guns in the trailer-home. In response, he pulled out more marijuana from a men's basketball shoe underneath the bed and identified the location of a gun. The officers retrieved a .40 caliber semi-automatic pistol loaded with a

magazine with six rounds of ammunition from a computer bag approximately six feet from the nightstand where the drugs were found.

The bedroom where the gun and drugs were found had men's basketball shoes underneath the bed and men's clothing strewn about. Lieutenant Daugherty said there was "definitely a male living there or staying in the room on a frequent occasion." They agreed that Houston's girlfriend paid the rent for the trailer-home and that none of the clothes in the bedroom were identified as belonging to Houston. They further explained that Houston was cooperative the entire encounter. In regard to whether the drugs or gun belonged to anyone else in the trailer-home, Assistant Director Miller said that Houston "was straight up about who it belonged to and the fact that he didn't want anyone else to have to . . . be in any trouble about it." Houston "took responsibility for everything seized from the home."

The officers characterized Houston as a street-level drug dealer due to the number of people he would deal with and the small amount of drugs sold. Assistant Director Miller described his job as "climbing the ladder" and asked Houston to work with him in targeting his supplier in the drug trade. Houston explained that he would regularly go to Murfreesboro, Tennessee, meet with another male whom he only knew as "Devin," and purchase approximately a quarter pound of marijuana. He would return to Bedford County and break the marijuana down into smaller quantities for resale "to make ends meet." The officers gave Houston the opportunity to participate in a controlled buy, for which he would be given "consideration." If Houston assisted the officers, then they would pass that information along to the District Attorney's Office. Houston was undecided whether he wanted to participate in a controlled buy at the time, and the officers gave him two weeks to consider it. Although Houston initiated several follow-up telephone conversations, he ultimately "fell off conversations" with Assistant Director Miller.

A forensic scientist with the Tennessee Bureau of Investigation conducted testing on five of the sixteen bags of a leafy substance recovered in connection with this case. She confirmed that the substance was marijuana and that the total cumulative weight was 16.1 grams. The remaining eleven bags weighed 45.3 grams and visually appeared to be marijuana.

The jury convicted Houston of possession of marijuana in an amount weighing not less than one-half ounce nor more than ten pounds for resale and delivery and possession of a firearm with the intent to go armed during the commission of a dangerous felony. After merging the drug convictions, the trial court sentenced Houston to two years' incarceration for possession of marijuana for resale and four years' incarceration for the

possession of a firearm during the commission of a dangerous felony, to be served consecutively.[2]

## ANALYSIS

The sole issue raised by Houston with respect to the sufficiency of his drug and firearm related convictions is whether the State adequately proved that he possessed the contraband.[3]  Based on the cases cited in his brief, he argues that possession was not established because (1) there were other people present where the drugs were found, (2) he was not in the same room as the drugs or the firearm when initially approached by law enforcement, (3) that he was not the owner of the premises where the drugs and firearm were found, and (4) no evidence of his personal property was found in the trailer.  In response, the State points out that Houston claimed responsibility for the drugs, admitted buying and selling the drugs to make extra money, and was in close proximity to the drugs and firearm at the time of the search.  We agree with the State.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict."  State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)).  When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.  State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).  When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two.  State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998).  The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'"  State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011)

---

[2] Pursuant to Tenn. Code Annotated section 39-17-1324(e), the trial court ordered the first three years of Houston's firearm conviction to be served at 100 percent less allowable credits.

[3] We have combined issues one and two of Houston's brief for clarity.

(quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. Id.

In order to sustain the drug convictions in this case, the State was required to prove that Houston knowingly sold or possessed marijuana in an amount less than one half ounce but not more than ten pounds. T.C.A. § 39-17-417(a). To sustain the firearm conviction, the State was required to prove that Houston "possess[ed] a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." Id. § 39-17-1324(a). This offense is comprised of three separate elements: (1) that the defendant possessed a firearm; (2) that the possession was with the "intent to go armed"; and (3) that the first two elements occurred during the commission or attempted commission of a "dangerous felony." State v. Fayne, 451 S.W.3d 362, 369 (Tenn. 2014).

In Tennessee, possession may be either actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). A person constructively possesses a controlled substance when he or she has "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." Id. at 903 (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). Said differently, constructive possession is the "ability to reduce an object to actual possession." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient." State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) (citing Cooper, 736 S.W.2d at 129). "Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." Cooper, 736 S.W.2d at 129.

Viewed in the light most favorable to the State, the record shows that Houston and his girlfriend's trailer-home were under surveillance for over a year prior to the instant offense. On the date of the offense, he sold a $20 bag of marijuana to an individual while his girlfriend's trailer-home was under surveillance by law enforcement. The individual confirmed that he purchased the marijuana from Houston. Officers approached the trailer-home, and Houston told them to come in. When asked to speak privately, Houston led them to a back bedroom. The officers told Houston they were investigating

marijuana distribution, and Houston directed his girlfriend to give them "that stuff." She then gave the officers several bags of marijuana and digital scales. Houston later produced additional amounts of marijuana and identified the location of a gun, which was in the same room only a short distance away. Houston twice admitted that the contraband recovered from the trailer- home was his. There were men's basketball shoes and clothes throughout the room. He further admitted that he was a low-level drug dealer. He told officers that he would regularly travel to Murfreesboro to purchase marijuana, and upon returning to Shelbyville, he would break it down into smaller amounts for resale to make extra money. He entertained the idea of cooperating with law enforcement to target other drug dealers, but failed to follow through. There is no question that Houston was in constructive possession of the marijuana and gun in this case. Accordingly, the evidence presented is more than sufficient for a reasonable juror to conclude that Houston was in constructive possession of the marijuana and gun recovered from the trailer-home. He is not entitled to relief.

## CONCLUSION

Upon our review, we affirm the judgments of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE