IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 13, 2018

## STATE OF TENNESSEE v. MICHAEL SHANE MCCULLOUGH

**Appeal from the Circuit Court for Obion County**
**No. CC-16-CR-24   Jeff Parham, Judge**

_____

### No. W2017-01219-CCA-R3-CD

_____

Defendant, Michael Shane McCullough, was indicted in February of 2016 by an Obion County grand jury for disorderly conduct, criminal littering, initiation of a process to manufacture methamphetamine, and promotion of methamphetamine manufacture. After a jury trial, Defendant was found guilty of criminal littering, initiation of process to manufacture methamphetamine, and promotion of methamphetamine manufacture. Defendant appeals from his convictions, challenging the sufficiency of the evidence for the methamphetamine-related convictions. Because we determine that the evidence was sufficient to support the convictions, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Megan B. Allen, Martin, Tennessee, for the appellant, Michael Shane McCullough.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Tommy A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At trial, Oliver Long testified that he lived in a rural part of Obion County. Around midnight on Friday, October 9, 2015, he was awakened by his girlfriend. Mr. Long kept a dog "out front in a cage and [the dog] was barking real bad." When Mr. Long got out of bed and looked out the window, he saw someone driving by slowly on a four-wheeler. The four-wheeler came up and down the road a few times; the dog continued to bark incessantly. Mr. Long called the police to report the disturbance. He

was unable to identify the person on the four-wheeler. On cross-examination, Mr. Long admitted that he did not know Defendant and was unaware that Defendant lived on the same road.

Deputy Michael Moore of the Obion County Sheriff's Office was dispatched to the area near Mr. Long's house to investigate the noise complaint involving the four-wheeler. When he arrived, he did not see or hear anything. Officer Wheeler remained in the area for approximately thirty minutes. At that time, he heard a "loud four-wheeler" coming up the road near the intersection of Mt. Moriah, Campground, and Hank Miller roads. Deputy Moore followed the four-wheeler and initiated a traffic stop by activating his blue lights.

The four-wheeler slowed down and Deputy Moore observed a "white ball-looking, about baseball-size object fly from [the hand of the driver] and into the ditch." The driver, later identified as Defendant, eventually stopped. Deputy Moore informed Defendant of the reason for the stop and asked Defendant to identify the object that he threw from the four-wheeler. Defendant denied throwing anything. Deputy Moore attempted to perform a cursory search of the ditch for the thrown object while watching Defendant but was unable to locate anything at that time. Deputy Moore instructed Defendant to take the four-wheeler home and "park it," letting him go with just a warning.

Once Defendant left the area, Deputy Moore searched the ditch for about five minutes. He found a "white plastic bag [sort of] like a Walmart bag, just a piece of a Walmart bag, and it had two smaller bags wrapped up in it. Both of them had white powder in them, or a white substance." This was the only thing Deputy Moore "found that matched the description of what [he] saw." The ground was wet from rain earlier that evening but the bag was relatively dry. Deputy Moore secured the item as evidence and drove to Defendant's house. Deputy Moore spoke with a family member at the house but was unable to speak with Defendant because Defendant "left" when the officer pulled up to the house.

When Deputy Moore arrived at the Sheriff's Office, he performed a field test on the substance in the bag. It was positive for ephedrine. Special Agent Brock Sain of the Tennessee Bureau of Investigation ("TBI") crime lab identified the substance as ephedrine or pseudoephedrine, weighing 14.62 grams. In his opinion, the substance appeared to be "tablets crushed up," a "substance that is an over-the-counter drug" that is "used in the manufacturing of methamphetamine."

Michael Simmons of the Obion County Sheriff's Department testified as an expert in the investigation of methamphetamine laboratories. Officer Simmons explained that

pseudoephedrine and ephedrine are precursors for methamphetamine. In order to make methamphetamine, it is necessary to "grind" the precursor to "separate the binder from it" so that it "dissolves" quicker when placed in the solvent. Officer Simmons explained that he had seen items like those found in the ditch "hundreds of times" while investigating labs where methamphetamine is made.

Kerry Dale Milton testified for Defendant. He claimed that Defendant was at his house on the night of the incident to pick up the four-wheeler. Mr. Milton had performed some repairs after Defendant had a wreck. Defendant came over around 10:00 p.m. that night and stayed for about an hour. Mr. Milton said Defendant did not have a bag with him that night.

At the conclusion of the proof, the jury found Defendant not guilty of disorderly conduct. However, the jury found Defendant guilty of criminal littering, initiation of process to manufacture methamphetamine, and promotion of methamphetamine manufacture. After a sentencing hearing, Defendant was sentenced to an effective sentence of twelve years as a Range II, multiple offender.

After the denial of his motion for new trial, Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the evidence was insufficient to support the convictions for initiating a process intended to result in the manufacture of methamphetamine and promoting methamphetamine manufacture.[1] Specifically, Defendant complains that the State failed to prove that: (1) Defendant was the person who crushed the pills in the bag; (2) Defendant knew of the contents of the bag; or (3) the bag found by Deputy Moore was the object thrown by Defendant from the four-wheeler. The State insists that the evidence was sufficient to support the convictions.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e);

---

[1] Defendant does not appear to challenge the remaining conviction for criminal littering.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Defendant was convicted of initiation of a process to manufacture methamphetamine. It is a crime for a person to "knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine." T.C.A. § 39-17-435(a). A person "initiates" the methamphetamine manufacture process by "begin[ning] the extraction of an immediate methamphetamine precursor from a commercial product, . . . begin[ning] the active modification of a commercial product for use in methamphetamine creation, or . . . heat[ing] or combin[ing] any substance or substances that can be used in methamphetamine creation." T.C.A. § 39-17-435(c). A person acts "knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302. A person acts "knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." *Id.* It is not a defense if "the chemical reaction is not complete, that no methamphetamine was actually created, or that the process would not actually create methamphetamine if completed." T.C.A. § 39-17-435(b).

Defendant was also convicted of promoting the manufacture of methamphetamine. A person who promotes methamphetamine manufacture when he or she "[s]ells, purchases, acquires, or delivers any chemical, drug, ingredient, or apparatus that can be used to produce methamphetamine, knowing that it will be used to produce methamphetamine, or with reckless disregard of its intended use[.]" T.C.A. § 39-17-433(a)(1).

Defendant attempts to distinguish his actions from factual scenarios wherein convictions for similar crimes were upheld by this Court on appeal. Specifically, Defendant cites *State v. Brian Christopher Dunn*, No. M2015-00759-CCA-R3-CD, 2016

WL 1446113, at *1 (Tenn. Crim. App. Apr. 12, 2016), *perm. app. denied* (Tenn. Aug. 17, 2016), and attempts to distinguish it from the facts in his case, claiming that because he "never admitted to crushing the ephedrine" and was never questioned "regarding the crushing of the ephedrine" the evidence cannot support a conviction. In *Brian Christopher Dunn*, police responded to a single-vehicle crash where they found the defendant and a female. *Id.* The defendant admitted that his license was revoked and that he had recently smoked marijuana. *Id.* Police searched the cargo area and discovered a funnel, two coffee filters, plastic tubing, lithium batteries, and a cold compression pack that had been cut open. *Id.* The defendant admitted that he had smoked methamphetamine a few days prior to the wreck but that he had no idea what was in the vehicle because it did not belong to him. *Id.* at *2. This Court concluded on appeal that the combination of the direct evidence of the statements made at the scene, the circumstantial evidence from the scene, and the defendant's constructive possession of the cold compression pack were sufficient to support the conviction for initiation of a process to manufacture methamphetamine. *Id.* at *5-6. Defendant also cites *State v. Anthony Laren Tweedy, II*, No. W2011-02373-CCA-R3-CD, 2012 WL 2875506, at *1 (Tenn. Crim. App. July 13, 2012), *no perm. app. filed*, and *State v. Danny Steve Wilkerson*, W2014-00324-CCA-R3-CD, 2015 WL 2128501, at *1 (Tenn. Crim. App. May 5, 2015), *perm. app. denied* (Tenn. Aug. 25, 2015), to support his argument. Defendant claims that the convictions in these cases were "not convicted solely on the presence of drug paraphernalia and precursors to methamphetamine, they were all accompanied by an admission of guilt."

Defendant's argument fails for several reasons, the most obvious of which is that it is not necessary for a criminal defendant to admit guilt in order to be convicted of a crime. To the contrary, the State is permitted to utilize both direct and circumstantial evidence to support a conviction. Even in the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Dorantes*, 331 S.W.3d at 379 (citing *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973); *Marable v. State*, 313 S.W.2d 451, 456-58 (1958)). Moreover, it was not even necessary that the proof show Defendant had actual possession of the drug precursors at the time of his arrest or be actually witnessed initiating the process in order to support the convictions.

> Possession may be actual or constructive. *See State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). If possession is deemed to be constructive, there must be proof that the accused had "'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). The mere presence of an individual in an area where drugs are found is not sufficient, standing alone, to find constructive possession. *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn.

Crim. App. 2000).  Similarly, an individual's mere association with a person in control of the drugs or the property where the drugs are located is not enough to support a finding of knowing possession.  *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987).

Constructive possession depends on the totality of the circumstances in each case.  It may be proven by circumstantial evidence.  [T.C.A.] § 39-17-419 (2006) (stating that possession may be inferred from "relevant facts surrounding the arrest").

*State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013).

Turning to the facts, the jury herein heard testimony from Deputy Moore that he witnessed Defendant throw something into a ditch.  When Deputy Moore searched the ditch a few minutes later, he located a plastic bag filled with crushed ephedrine.  The bag itself was relatively dry while all of the other items in the area were soaked from the recent rain.  Deputy Moore did not locate anything else in the ditch similar in size, shape, or color to the white, baseball-sized object he witnessed Defendant throw from the four-wheeler.  It was reasonable for the jury to conclude that Defendant acquired the ephedrine, crushed it, and placed it in the bag before throwing it in the ditch.  It was also reasonable for the jury to conclude that the crushed ephedrine would be used to make methamphetamine.  Officer Simmons explained that in order to make methamphetamine it is necessary to "grind" the precursor to "separate the binder from it" so that it "dissolves" quicker when placed in the solvent.  Officer Simmons explained that he had seen items like those found in the ditch "hundreds of times" while investigating labs where methamphetamine are made.  A reasonable juror could conclude from the evidence at trial that Defendant began the process of extraction of an immediate methamphetamine precursor from a commercial product with the intent to manufacture methamphetamine and that Defendant purchased or acquired the ephedrine or pseudoephedrine knowing that it would be used to make methamphetamine or with reckless disregard for its use.  Consequently, we conclude that the evidence was sufficient to support the convictions.  Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE